HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PHUC HUU NGUYEN,<br><br>            Petitioner,<br><br>    v.<br><br>PAMELA BONDI, *et al.*,<br><br>            Respondents. | Case No.  2:25-cv-02723-RAJ<br><br>ORDER |

## I.    INTRODUCTION

THIS MATTER comes before the Court on Petitioner Phuc Huu Nguyen's petition for writ of habeas corpus, Dkt. # 1. The Court has reviewed the petition, the submissions in support of and in opposition to the petition, and the balance of the record. For the reasons set forth below, the Court **GRANTS** Mr. Nguyen's petition in part.

## II.    BACKGROUND

Mr. Nguyen is a citizen of Vietnam currently detained at the Northwest Immigration Processing Center in Tacoma, Washington ("NWIPC"). Dkt. # 11 ¶ 4; Dkt. # 1 at 2. In 1975, when Mr. Nguyen was an infant, he and his family came to the United States as refugees after the Vietnam War. Dkt. # 11 ¶ 4; Dkt. # 13 at 1. In 1978, he adjusted to lawful permanent resident status. Dkt. # 11 ¶ 4.

ORDER - 1

In Mr. Nguyen's early adulthood, he sustained criminal convictions that resulted in a final order of removal and two unsuccessful attempts to deport him. Specifically, in 1995 and 1997, Mr. Nguyen sustained multiple state court criminal convictions relating to possession of controlled substances and being a felon in possession of a firearm. Dkt. # 11 ¶¶ 5–7. As a result of these convictions, Mr. Nguyen was placed in deportation proceedings and on February 2, 1999, an immigration judge ordered that he be removed to Vietnam. *Id.* ¶ 8. Thereafter, Mr. Nguyen was held in immigration detention from April 28, 1999 to October 25, 1999 (approximately six months), and then released because immigration officers were unable to effectuate his deportation to Vietnam. *Id.* ¶ 9. In 2000, Mr. Nguyen was convicted in federal court for conspiracy to manufacture, possess with intent to distribute methamphetamine. *Id.* ¶ 10. After serving his sentence, Mr. Nguyen was again taken into immigration custody. *Id.* ¶ 11. This time, he was detained from September 9, 2011 to October 19, 2011 (more than one month) and then released on an Order of Supervision ("OSUP") because immigration officers were unable to obtain a travel document to Vietnam. *Id.*

For approximately 14 years, from his release in 2011 to his recent re-detention in 2025, Mr. Nguyen remained in the community on an OSUP with monthly check-ins. *Id.* ¶ 12. Nothing in the record suggests Mr. Nguyen failed to comply with the conditions of his OSUP during this time.

On December 11, 2025, without any precipitating event on Mr. Nguyen's part, Immigration and Customs Enforcement ("ICE") re-detained Mr. Nguyen. *Id.* ¶ 13. On that date, the Office of Enforcement and Removal Operations ("ERO"), a division of ICE, "determined that there was now a significant likelihood of removal in the foreseeable future . . . due to a change in circumstances and ongoing cooperation between the United States and Vietnam." *Id.* As a result, ERO arrested Mr. Nguyen, conducted

an initial informal interview with him, and revoked his OSUP. *Id.* As of today, Mr. Nguyen remains detained at NWIPC. Dkt. # 1 at 2.

There is no indication in the record of when a travel document may issue for Mr. Nguyen, if at all. Respondents submit a declaration from Brandon Curran, a deportation officer, who states "ERO is currently checking with ICE HQ about the status of the [travel document] request" but "ERO has not received confirmation at this time what stage the [travel document] request is at, whether still in review or forwarded to the Vietnamese Consulate." Dkt. # 11 ¶ 14. Mr. Curran further states that for noncitizens without documentation of Vietnamese citizenship, like Mr. Nguyen, the Vietnamese government will conduct an interview prior to issuing a travel document, and that this process "typically" takes one to three months "[f]rom the time that a request is made." *Id.* ¶ 15. There is no indication in the record that an interview has been requested for Mr. Nguyen. Finally, Mr. Curran states the "government of Vietnam continues to issue travel document for their citizens" and "DHS has every reason to believe the government of Vietnam will *ultimately* issue one for [Mr. Nguyen]." *Id.* ¶ 16 (emphasis added).

### III.   LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). The district courts' habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may seek habeas relief by showing that he or she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

## IV.  DISCUSSION

Mr. Nguyen seeks habeas relief on the following grounds: (1) his prolonged detention is unlawful under *Zadvydas*; (2) his re-detention violates procedural due process; (3) Respondents failed to comply with 8 C.F.R. § 241.13; (4) his detention is punitive in violation of substantive due process; (5) removal to a third country without meaningful notice and opportunity to respond violates the Fifth Amendment, 8 U.S.C. § 1231, and the Convention Against Torture; and (6) removal to a third country is punitive in violation of the Fifth and Eight Amendments. *See generally* Dkt. # 1. He seeks relief including an order (1) directing his immediate release; (2) prohibiting his re-detention absent notice and hearing; (3) prohibiting his re-detention absent a travel document and other specified conditions; (4) prohibiting removal to a third country without reopened removal proceedings; and (5) prohibiting removal to a third country because it is constitutionally punitive. *Id.* at 27–28. In their return memorandum, Respondents do not substantively address Mr. Nguyen's arguments relating to the lawfulness of his current detention. *See generally* Dkt. # 10. They argue only that his "claims for injunctive relief and claims relating to the prospect of third country removal are improperly before this Court." *Id.* at 1–2.

For the reasons discussed below, the Court finds Mr. Nguyen's current detention is unlawful under *Zadvydas* and violates procedural due process.[1] The Court further finds there is a material risk of Mr. Nguyen's unlawful re-detention and removal to a third country, and therefore grants his requested injunctive relief in part.

---

[1] The Court declines to reach Mr. Nguyen's remaining arguments that his re-detention violates 8 C.F.R. § 241.13 and substantive due process.

ORDER - 4

### A.  *Zadvydas*

8 U.S.C. § 1231, a provision of the Immigration and Nationality Act, governs the detention of noncitizens subject to a final order of removal. Under this statute, once a removal order becomes administratively final, the government has 90 days—called the "removal period"—to remove the noncitizen from the United States. 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen "shall" be detained. *Id.* § 1231(a)(2)(A). Once the removal period expires, the government "may" continue to detain certain noncitizens, including those subject to removal due to a criminal offense, or it may release the noncitizen on supervision. *Id.* § 1231(a)(6); *see also Zadvydas*, 533 U.S at 683.

The length that a noncitizen may be detained after expiration of the removal period is limited by "the Constitution's demands." *Zadvydas*, 533 U.S at 689. Specifically, the Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. In *Zadvydas*, the Supreme Court held that, when read in light of this constitutional mandate, post-removal period detention under § 1231(a)(6) must be limited to "a period reasonably necessary to bring about [the noncitizen's] removal from the United States." *Zadvydas*, 533 U.S at 689.

*Zadvydas* established a framework to assess the reasonableness of post-removal period detention under 8 U.S.C. § 1231(a)(6). A total detention of six months is presumptively reasonable. *Id.* at 701. After six months, a petitioner challenging his or her detention must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* The burden then shifts to the government to come up with "evidence sufficient to rebut that showing." *Id.* If the government fails to rebut the showing, then the petitioner is entitled to habeas relief. *Id.* "For detention to remain reasonable, as the period of prior postremoval confinement

grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The Court finds that Mr. Nguyen is entitled to habeas relief under *Zadvydas*. First, it is undisputed that Mr. Nguyen has been detained for more than six months, and his detention is therefore not presumptively reasonable. "[W]here a petitioner has been detained and released by ICE multiple times after a final order of removal, 'the clock' on *Zadvydas's* six-month period of presumptive reasonability does not re-start with each successive detention." *Abubaka v. Bondi*, No. 25-cv-1889, 2025 WL 3204369, at *3 (W.D. Wash. Nov. 17, 2025); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. Aug. 21, 2025) (rejecting government's argument that detention period must be consecutive). Here, Mr. Nguyen has been detained for a total of more than eight months. He was detained for approximately six months in 1999, more than one month in 2011, and more than one month as of the date of this order. Dkt. # 11 ¶¶ 9, 11, 13. His ongoing detention is therefore not presumptively reasonable.

Second, Mr. Nguyen satisfies his burden of showing there is no significant likelihood of removal in the reasonably foreseeable future. An order of removal was entered against Mr. Nguyen in February 1999—nearly 27 years ago. *Id.* ¶ 8. In that time, the government twice attempted to deport Mr. Nguyen to Vietnam with no success. *Id.* ¶ 9, 11. In 2011, it released Mr. Nguyen on an OSUP because it was unable to obtain a travel document from Vietnam. *Id.* ¶ 11. The Court takes note of numerous cases from this district finding that Vietnam has historically refused to issue travel documents for individuals, like Mr. Nguyen, who immigrated to the United States before 1995, and that the process remains "uncertain and protected" today. *See, e.g.*, *Nguyen*, 796 F. Supp. 3d at 723; *Abubaka*, 2025 WL 3204369, at *4; *Do v. Scott*, No. 25-cv-2187, 2025 WL 3496909, at *4 (W.D. Wash. Dec. 5, 2025). Finally, Mr. Nguyen states he does not have

a birth certificate, passport, other documents to substantiate that he is a Vietnamese citizen, or any ties to Vietnam. Dkt. # 1 at 6. Under these circumstances, the Court finds there is no significant likelihood that Mr. Nguyen will be removed in the reasonably foreseeable future.

Third, the government fails to rebut Mr. Nguyen's showing. Significantly, Mr. Curran's declaration provides no reason to conclude Vietnam will issue a travel document for Mr. Nguyen now after it previously refused. While Mr. Curran vaguely states Vietnam "continues to issue travel document for their citizens," he does not explain if this statement applies to individuals, like Mr. Nguyen, who arrived in the United States before 1995, have no documentation of Vietnamese citizenship, and no ties to the country. Dkt. # 11 ¶ 16. Moreover, beyond the issue of whether a travel document will issue at all, it appears unlikely that one will issue in the reasonably foreseeable future. Mr. Curran states he does not know "what stage the [travel document] request is at" and whether it has been forwarded to Vietnam. *Id.* ¶ 14. He also states that for individuals, like Mr. Nguyen, with no documentation of Vietnamese citizenship, Vietnam requires an interview process that typically takes one to three months "[f]rom the time that a request is made." *Id.* ¶ 15. There is no indication that such a request has been made. Finally, Mr. Curran states "DHS has every reason to believe the government of Vietnam will *ultimately* issue" a travel document for Mr. Nguyen. *Id.* ¶ 16 (emphasis added). But "ultimately" is a far cry from *Zadvydas's* mandate of the reasonably foreseeable future. In short, the government's submission only confirms that it has not obtained a travel document for Mr. Nguyen, does not know when one will issue, and indeed does not know if one will issue at all.

Under these facts, the Court finds Mr. Nguyen's current detention is unlawful under *Zadvydas* and he is entitled to immediate release.

ORDER - 7

### B. Procedural Due Process

The Fifth Amendment forbids the government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 522 (1965)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (quoting *Morrissey v.* Brewer, 408 U.S. 471, 481 (1972)). It "applies to all 'persons' within the United States, including [noncitizens], whether their presence here in lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

In *Mathews*, the Supreme Court set out three considerations for determining whether a particular governmental action comports with due process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. In *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit assumed without deciding that the *Mathews* test applies in the immigration detention context. *Id.* at 1207.

Applying the *Mathews* test, several courts in this district have found due process violations where the government—despite not having a valid travel document or other individualized basis for re-detention—re-detained noncitizens with a final order of removal without notice and a meaningful opportunity to respond. *See Wana v. Bondi*, No. 25-cv-2321, 2025 WL 3628634, at *5 (W.D. Wash. Dec. 15, 2025); *Tran v. Bondi*,

No. 25-cv-2335, 2025 WL 3725677, at *4–7 (W.D. Wash. Dec. 24, 2025); *Tzafir v. Bondi*, No. 25-cv-2067, 2026 WL 74088, at *3–5 (W.D. Wash. Jan. 9, 2026).

The Court is persuaded by the above cases and similarly finds that Mr. Nguyen's re-detention under the particular circumstances of this case violates due process. Under the first *Mathews* factor, Mr. Nguyen has a strong interest in remaining free from detention. The "interest in being free from physical detention by one's own government" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [due process] protects."). "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (collecting cases). At the time of Mr. Nguyen's re-arrest, he had been released on an OSUP for approximately 14 years and apparently attended monthly check-ins without incident. *See* Dkt. # 11 ¶ 12. He has a strong interest in his continued liberty under the conditions of his supervision.

Under the second *Mathews* factor, the procedures used to re-detain Mr. Nguyen created a high risk of an erroneous deprivation of liberty interests, and there is probable value in additional safeguards. Under 8 C.F.R. § 241.13(i)(2), the government may revoke a noncitizen's OSUP if "on account of changed circumstances," the government determines "there is a significant likelihood that the [noncitizen] may be removed in the

reasonably foreseeable future." [2] In Mr. Nguyen's case, on December 11, 2025, ERO unilaterally determined such "changed circumstances" existed based on "ongoing cooperation between the United States and Vietnam." Dkt. # 11 ¶ 13. As a result, it re-detained him on the same day without notice and a hearing. As discussed above, this was an erroneous deprivation of Mr. Nguyen's liberty interests in violation of *Zadvydas*. The particular procedures used in this case—a unilateral determination by ERO of "changed circumstances," despite having no travel document in hand, and no pre-detention hearing—created the high risk that resulted in Mr. Nguyen's unlawful detention. "Even if the Government might believe it has a valid reason to detain petitioner, this does not eliminate its obligation to effectuate the detention in a manner that comports with due process." *Gregorio Ordoñez*, 2025 WL 3852444, at *4. Additional safeguards, including notice and hearing before an immigration court, may have prevented this regrettable outcome.

Under the third *Mathews* factor, the government has a low interest in re-detaining a noncitizen without a pre-detention hearing where the noncitizen is in compliance with the terms of release and the government has not obtained a valid travel document. It is true that the government has an interest in "ensuring the appearance of [noncitizens] at future immigration proceedings" and "[p]reventing danger to the community."

---

[2] 8 C.F.R. § 241.13(i)(3) sets forth certain procedures that must be followed upon the revocation of an OSUP. The Court does not reach the question of whether Respondents complied with these procedures. Regardless, "even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process." *Gregorio Ordoñez v. Bondi*, No. 25-cv-2356, 2025 WL 3852444, at *4 (W.D. Wash. Dec. 19, 2025), *report and recommendation adopted*, 2026 WL 30022 (W.D. Wash. Jan. 5, 2026); *see also Wana*, 2025 WL 3628634, at *5 ("Those meager procedures do not, however, provide the process due under the Fifth Amendment").

*Zadvydas*, 533 U.S. at 690. But here, Mr. Nguyen has complied with the conditions of his OSUP for approximately 14 years and appeared for monthly check-ins. Dkt. # 11 ¶ 12. There is no indication the government's interest required re-detaining Mr. Nguyen without notice and hearing. Moreover, "[i]n immigration court, custody hearings are routine and impose a 'minimal' cost." *Tzafir*, 2026 WL 74088, at *4 (quoting *Carballo v. Andrews*, No. 25-978, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025)). Thus, the Court finds that the government's interest is overall low.

Taken together, all three *Mathews* factors favor Mr. Nguyen and support a finding that his re-detention violates procedural due process. This forms yet another basis to order his immediate release.

### C.     Additional Relief

Federal courts are authorized to dispose of habeas matters "as law and justice require." 28 U.S.C. § 2243. The statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968). Rather, district courts "enjoy 'broad' discretion in fashioning remedies for habeas relief." *Johnson v. Uribe*, 700 F.3d 413, 425 (9th Cir. 2012) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

#### 1.     Future Re-Detention

Mr. Nguyen asks for an order prohibiting his future re-detention absent certain conditions, including notice and a hearing before a neutral decisionmaker and a valid travel document for him to Vietnam. Dkt. # 1 at 27. Respondents argue that to grant relief, there must be some danger of recurrent violation, and Mr. Nguyen fails to show any alleged violation is likely to recur. Dkt. # 10 at 7. In his reply, Mr. Nguyen argues there is a strong possibility of his re-detention because he "fits the profile of the Trump administration's highest arrest priority and the government allegedly has been able to

effect some removals to Vietnam." Dkt. # 13 at 8. Mr. Nguyen cites to a recent Department of Homeland Security press release announcing that ICE "arrested more worst of the worst criminal illegal aliens from across the country convicted of heinous crimes including . . . distribution of cocaine." *Id.* at 7–8. Mr. Nguyen notes that he "has just such a drug conviction." *Id.*

The Court, in its discretion, finds that imposing conditions on any future re-detention of Mr. Nguyen is necessary to fully effectuate the intent of this order. Mr. Nguyen has demonstrated a real risk of his re-detention both because he appears to fall into a target group for immigration arrests (noncitizens with past criminal convictions) and because he is from a country that is the subject of the government's increased removal efforts. *See* Dkt. # 13 at 7–8; Dkt. # 11 ¶ 16. Indeed, the fact that Respondents have already unlawfully re-detained Mr. Nguyen once without due process or likelihood of removal in the reasonably foreseeable future raises serious concerns that, absent sufficient safeguards, the same thing may happen again. Respondents make no assurances that Mr. Nguyen will not be re-detained. Finally, Mr. Nguyen "seeks a pre-deprivation hearing; he can enforce that right only by bringing a challenge now, prior to being re-arrested." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019).

Accordingly, the Court finds it appropriate to prohibit re-detention of Mr. Nguyen absent notice and opportunity to be heard and a valid travel document, as described more fully below. Several courts in this district have granted similar relief. *See Wana*, 2025 WL 3628634, at *6 (prohibiting re-detention without notice and hearing); *Tzafir*, 2026 WL 74088, at *5 (same); *Yuksek v. Bondi*, No. 25-cv-2555, 2026 WL 60364, at *5 (W.D. Wash. Jan. 8, 2026) (same); *Do*, 2025 WL 3496909, at *4 (prohibiting re-detention without valid travel document and other specified conditions).

### 2. Third Country Removal

Mr. Nguyen also seeks an order prohibiting his removal to a third country without notice and a meaningful opportunity to respond in reopened removal proceedings. Dkt. # 1 at 28. Respondents argue this issue is not ripe because "there is no concrete indication that such removal to a third country will occur or is likely to occur." Dkt. # 10 at 8.

The Court finds the issue is ripe for review. As discussed above, Mr. Nguyen appears to fall into a priority group for Respondents' current removal efforts, but at the same time, it is questionable whether Respondents will be able to obtain a travel document for him to Vietnam. This creates a palpable risk that Respondents may attempt to deport him through other means. And although Mr. Curran's declaration focuses on ERO's efforts to remove Mr. Nguyen to Vietnam, nothing in the record indicates Respondents are not or will not attempt to remove Mr. Nguyen to a third country. Indeed, a July 9, 2025 internal ICE memorandum confirms its willingness to remove noncitizens to third countries swiftly and with little notice. Dkt. # 1 at 20–21; *Nguyen*, 796 F. Supp. 3d at 728.[3] Specifically, the memorandum states that in instances with adequate "diplomatic assurances" from the country of removal, a noncitizen may be removed "without the need for further procedures." *Id.* Even absent such assurances, ERO may execute the removal in as little as six hours in "exigent circumstances." *Id.* Instances of pre-1995 Vietnamese immigrants, like Mr. Nguyen, being deported to South Sudan and Eswatini have already occurred. *Nguyen*, 796 F. Supp. 3d at 716–17. These facts, in conjunction, create an imminent threat that Mr. Nguyen will face third country removal absent an injunction. *See Wana*, 2025 WL 3628634, at *5 (finding same).

---

[3] Mr. Nguyen's petition does not offer citations to the memorandum or attach it in a supporting declaration, but the Court takes notice of contents of the memorandum as recited in *Nguyen* and filed in that case.

Turning to the merits, a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). "The guarantee of due process includes the right to a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* at 1010. "[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country." *Nguyen*, 796 F. Supp. 3d at 727. As the court found in *Nguyen*, the policy set out in the July 9, 2025 ICE memorandum "contravenes Ninth Circuit law." *Id.* at 728. Thus, the Court finds it is appropriate to grant Mr. Nguyen's requested relief to prevent the unlawful implementation of ICE's current third country removal policy.

Finally, Mr. Nguyen asks for an order "that Respondents may not remove Petitioner to *any third country* because Respondents' third country removal program seeks to impose unconstitutional punishment on its subjects, including imprisonment and other forms of harm." Dkt. # 1 at 28 (emphasis added). The Court declines to find, based on the existing record, that removal to a third country would be unconstitutionally punitive in all instances. The relief granted above—notice and a meaningful opportunity to respond in reopened removal proceedings—will give Mr. Nguyen the ability to contest removal to a third country where he is likely to face imprisonment or other harm, and nothing in this order precludes him from pursuing other avenues of relief if necessary.

## V.     CONCLUSION

For the forgoing reasons, the Court **GRANTS** Mr. Nguyen's petition for writ of habeas corpus, Dkt. # 1. The Court **ORDERS** that Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them:

(1)     Shall immediately release Mr. Nguyen from custody under the conditions of his most recent order of supervision;

(2)     Shall file with the Court a notice within 2 business days confirming Mr. Nguyen's release;

(3)     Are prohibited from re-detaining Mr. Nguyen unless and until:

    (a)     Providing at least 10 days' notice and an opportunity to be heard before an immigration judge to determine whether re-detention is appropriate; and

    (b)     Obtaining a valid travel document for Mr. Nguyen to Vietnam if Respondents seek to re-detain him under 8 C.F.R. § 241.13(i)(2);

(4)     Are prohibited from removing or attempting to remove Mr. Nguyen to a country other than Vietnam without at least 10 days' notice and a meaningful opportunity to be heard in reopened removal proceedings before an immigration judge.

Dated this 23rd day of January, 2026.

*Richard A. Jones*
The Honorable Richard A. Jones
United States District Judge